Filed 5/13/16  P. v. Fadden CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BARRETT JUSTON FADDEN,<br><br>Defendant and Appellant. | F070463<br><br>(Super. Ct. No. MF006708A)<br><br>**OPINION** |

-ooOoo-

THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

[*]Before Levy, Acting P.J., Kane, J., and Detjen, J.

## INTRODUCTION

In *People v. Fadden* (Jan. 4, 2007, F049795), an unpublished opinion, this court affirmed defendant Barrett Juston Fadden's conviction for possession of a weapon while confined in a penal institution (Pen. Code, § 4502, subd. (a)).[1] On November 4, 2014, pursuant to the resentencing provision of Proposition 36, the Three Strikes Reform Act of 2012 (Proposition 36), the trial court heard and denied defendant's petition for resentencing. We affirm the trial court's ruling.

## FACTS AND PROCEEDINGS

Defendant was a prison inmate in September 2004, serving a sentence of 13 years 4 months following convictions for two counts of carjacking (§ 215, subd. (a)) and two counts of child endangerment (§ 273a, subd. (a)).[2] Defendant had to pass through a metal detector as he was being processed for admission to the California Correctional Institute in Tehachapi after being transferred from Calipatria State Prison. Defendant removed a metal ring from his finger but still set off the metal detector. When told he would be X-rayed, defendant removed a package from his anal cavity. Guards unwrapped the package and found six razor blades and some papers. The blades were one and one-half inches long and five-sixteenths of an inch wide. They appeared to be taken from disposable razors.

Defendant testified at trial the package contained only paper, not razor blades. Defendant also claimed the ring was stuck on his finger, which caused the metal detector to go off twice. The papers defendant hid were his prison records showing he was a carjacker. Because it took weeks for prison documentation to reach Tehachapi from Calipatria, defendant brought the papers to prove to other inmates he was not a child molester.

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

[2]The facts and proceedings are derived from defendant's appeal and our opinion in *People v. Fadden*, *supra*, F049795, relevant portions of the trial proceedings in that appeal, and the hearing based on defendant's petition for resentencing.

2.

In ruling on the resentencing petition, the trial court stated it was taking judicial notice of the preliminary hearing transcript, the reporter's transcript from trial, and this court's opinion in *People v. Fadden*, *supra*, F049795.  Officer Jeff Cable explained defendant underwent an unclothed body search, nothing was found, and defendant went through a metal detector.  Cable testified at the preliminary hearing that he performed the body search of defendant.  At trial, Cable did not remember if he had performed the unclothed body search.

Cable explained that when he performs a body search, he first has the inmate strip down.  Cable then looks at the inmate's hands, has the inmate raise his arms, and looks underneath the inmate's arms and inside his mouth.  Cable also looks behind the inmate's ears.  Cable checks the inmate's hair if it is long, and also checks the inmate's anal cavity.

At trial Cable explained defendant set off the metal detector and then removed a ring and went through the metal detector again.  The metal detector alarm sounded again.  Defendant told Sergeant John Beckett he had six razor blades, but did not say where they were secreted.  Beckett sent Officers Cable and Michael Bojan to retrieve the razor blades.

Defendant was taken to a utility room where there was a portable toilet for defendant to use while he removed from his body anything he was carrying.  Defendant was squatting when he removed a bindle from his anus that was about four inches long and one inch in diameter.  Bojan described defendant as fumbling around as he retrieved the bindle.  At the preliminary hearing, Bojan said they spent about five minutes total in the utility room.  Bojan further explained defendant sat on the portable toilet, placed his right hand behind him, and dropped the bindle into the toilet.

After exchanging the metal restraints defendant was wearing with flex restraints, defendant went through the metal detector a third time and the alarm did not sound.  Bojan put on latex gloves and proceeded to unwrap the bindle with Cable watching.

3.

After cleaning off fecal matter, he untied a knot at the end of the cylindrical bindle and then undid two more layers. The three layers were made from the fingers of latex gloves. There was a layer of toilet paper wrapped around three sheets of paper. Inside one of these sheets of paper were six razor blades. The blades were one-and-a-half inches long and five-sixteenths of an inch wide. Photographs of the unraveled bindle were admitted into evidence.

Beckett explained razor blades were not permitted because inmates use them as a weapon against staff and each other. Inmates use them as slashing instruments and also manufacture them into sturdier weapons. Inmates are only allowed to use a razor to groom themselves in the shower, and it is removed from the inmate upon leaving the shower.

## DISCUSSION

Defendant contends he was not armed because the razor blades found in his rectum were not available for immediate use. Defendant argues he was fumbling while trying to remove the bindle, and his possession of the razor blades did not pose an immediate threat to anyone. We disagree.

On November 6, 2012, the voters approved Proposition 36, which amended sections 667 and 1170.12 and added section 1170.126. Proposition 36 changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law, a recidivist with two or more prior strikes who was convicted of any new felony was subject to an indeterminate life sentence. Proposition 36 restricted the three strikes law by reserving the life sentence for cases where the current offense is a serious or violent felony, or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist is sentenced as a second strike offender. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.)

In addition to reforming three strikes sentencing for defendants convicted after the effective date of Proposition 36, the initiative also added section 1170.126 to provide for retroactive reform of existing three strikes sentences imposed before the effective date of the initiative. Section 1170.126 "provides a means whereby, under three specified eligibility criteria and subject to certain disqualifying exceptions or exclusions, a prisoner currently serving a sentence of 25 years to life under the pre-Proposition 36 version of the Three Strikes law for a third felony conviction that was not a serious or violent felony may be eligible for resentencing as if he or she only had one prior serious or violent felony conviction." (*People v. White* (2014) 223 Cal.App.4th 512, 517 (*White*), review den. Apr. 30, 2014, S217030.)

In *White*, *supra*, 223 Cal.App.4th 512, the court rejected an argument very similar to defendant's. It held the defendant there was ineligible for resentencing under section 1170.126 because "the record of conviction," which consisted of the trial evidence and appellate record, established he had a firearm in his possession and was personally armed in the commission of the underlying offenses, even though he was not charged with an arming enhancement. (*White*, *supra*, at pp. 525–526.) *White* further held the prosecution was not required to plead and prove charges and/or enhancements supporting facts to disqualify him from resentencing under Proposition 36. (*White*, at pp. 526–527.)

A series of cases have reached the same conclusion as *White* and hold that the superior court may review the documents contained in the entire record of the qualifying conviction, including prior appellate opinions, to determine if the defendant is ineligible for resentencing, and the prosecution is not required to plead and prove any of the disqualifying factors set forth in section 1170.126. (*People v. Chubbuck* (2014) 231 Cal.App.4th 737, 740, 747; *People v. Brimmer* (2014) 230 Cal.App.4th 782, 798–800; *People v. Guilford* (2014) 228 Cal.App.4th 651, 660; *People v. Elder* (2014) 227 Cal.App.4th 1308, 1314–1317; *People v. Blakely* (2014) 225 Cal.App.4th 1042, 1063; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1030-1032, 1038-1039.)

The court in *White* further noted the California Supreme Court has explained in *People v. Bland* (1995) 10 Cal.4th 991, 997, that arming is established by the availability and ready access of the weapon. (*White*, *supra*, 223 Cal.App.4th at p. 524.) The Supreme Court has rejected the argument that possession of extra razors and razor blades while in custody is not inherently deadly and involves the implied threat of violence even where there is no evidence the defendant displayed the contraband in a provocative or threatening manner. (*People v. Tuilaepa* (1992) 4 Cal.4th 569, 589.)

Defendant was convicted of section 4502 which prohibits possession, among other things, of sharp instruments. Sections 4502 and 4575 create strict liability for possession of proscribed weapons and devices. A plain razor blade's potential for use as a deadly weapon does not depend on an intended violent use. In determining the potential of a proscribed item to cause great bodily injury or death, we do not consider the percentage chance of great bodily injury or death. (See *People v. Savedra* (1993) 15 Cal.App.4th 738, 745.)

Defendant argues that because he fumbled in removing the bindle containing razor blades from his rectum, and because they were so carefully wrapped, the razor blades were not available for his immediate use. These factual contentions lack merit. Although Officers Cable and Bojan spent approximately five minutes in the utility room where the portable toilet was located, Bojan described defendant squatting down, placing his hand behind himself, and removing the bindle. This process was brief. Defendant was being watched by two guards as he removed the bindle; he had already told Sergeant Beckett he had secreted the six razor blades. The procedure as described by Bojan happened without undue delay, and any fumbling by defendant is attributable to defendant's apparent nervousness under the circumstances.

The time it took for Bojan to open the bindle was likely caused by him having to clean off the fecal matter and then cautiously unravel it. It is unlikely defendant would feel so constrained in removing the bindle to quickly acquire the razor blades to use as

6.

weapons. Sergeant Beckett testified razor blades could be manufactured into weapons. He also testified the blades by themselves are used by inmates to slash other inmates and prison staff. As we read the facts, defendant had immediate, if not instant, access and availability to the razor blades within the meaning of *People v. Bland*, *supra*, 10 Cal.4th 991 and its progeny. The trial court did not err in denying defendant's motion for resentencing.

## DISPOSITION

The trial court's denial of defendant's petition for resentencing pursuant to Proposition 36 is affirmed.